THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| COVERSTAR, INC., A Utah corporation, | ) | Case No. 2:01cv663 DS |
| Plaintiff, | ) | |
| vs. | ) | MEMORANDUM DECISION |
| COOLEY, INC., a Rhode Island corporation; and COOLEY ENGINEERED MEMBRANES, INC., a Rhode Island corporation, | ) ) ) | AND ORDER |
| Defendant. | ) | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## I. INTRODUCTION

Coverstar, Inc. manufactures safety pool covers. From late 1996 through the fall of 1999, Coverstar purchased polypropylene fabric from Cooley, Inc., which Coverstar used as a component of its automated pool cover systems. When defects in the fabric were discovered, Cooley repeatedly modified its product formulation to try to correct those defects. The fabric continued to fail, however, and on August 28, 2001, Coverstar filed this suit claiming that Cooley's polypropylene fabric was defective in that it was not suitable for pool covers, and that Cooley had breached express and implied warranties. Coverstar sued for, among other things, lost profits for it and its distributors. Cooley moved for Summary Judgment.

The Court hereby grants Cooley's Motions for Summary Judgment, finding that there was a written limited warranty which clearly and unambiguously limited Coverstar's remedy to replacement of material or credit for amount invoiced, and precluded liability for subsequent or consequential damages.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"[1] The court must "view the evidence, and draw reasonable inferences therefrom, in the light most favorable to the nonmoving party."[2]  But "the 'mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient' to create a genuine issue of material fact."[3]  Thus, to preclude summary judgment, "the nonmovant must present facts upon which a reasonable jury could find in favor of the nonmovant."[4]

## III.  FACTUAL BACKGROUND

From the outset of the discussions between the parties in 1993, Lanny Smith, Coverstar's chief executive officer, emphasized that he required a written warranty before he would begin to purchase polypropylene fabric from Cooley.  Because Cooley was not in the pool cover fabric business and did not have a pool cover warranty, Mr. Smith provided to Cooley a model warranty–a copy of a written pool cover warranty that had been provided to Coverstar by another potential supplier of pool cover fabric, Intex Plastic Corporation ("Intex")(Defendant's Statement of Undisputed Facts ("Defendant's"), Ex. 1).  Cooley eventually modeled its warranty on the

---

[1] *Green v. New Mexico,* 420 F.3d 1189, 1192 (10th Cir. 2005) (quoting Fed. R. Civ. P. 56(c)).

[2] *Id.* (citing *Plotke v. White,* 405 F.3d 1092, 1094 (10th Cir. 2005)).

[3] *Johnson v. Lindon City Corp.,* 405 F.3d 1065, 1068 (10th Cir. 2005) (quoting *Lawmaster v. Ward,* 125 F.3d 1341, 1347 (10th Cir. 1997).

[4] *Id.*

Intex warranty, adopting it virtually verbatim (except for replacing the Intex name with the Cooley name).  The warranty was a limited warranty of three years that disclaimed liability for subsequent or consequential damages, and provided that the sole remedy for defective material was replacement of the material or credit for the purchase price paid for the material.

In June 1994, Cooley sent a sample of polypropylene material to Coverstar.  In a letter dated June 8, 1994, Mr. Smith acknowledged receipt of the fabric sample.  He began and ended his letter with requests for a written warranty.  On June 21, 1994, Cooley's home office sent a copy of Cooley's new Pool Cover Limited Warranty (modeled after the Intex warranty Mr. Smith had provided) to Brad Hochberger, its salesman who was working with Coverstar.  Mr. Hochberger faxed the warranty to Mr. Smith at Coverstar that same day.  No fabric was purchased at this time, and in August Mr. Smith broke off negotiations with Cooley because he was unhappy with delays on the product and he did not like the price Cooley was charging.

In late 1995 negotiations began again.  Mr. Hochberger's handwritten notes from early 1996 reflect conversations with Mr. Smith concerning Coverstar's interest in purchasing polypropylene pool cover material from Cooley.  They also show Mr. Smith's insistence on obtaining a written warranty: "needs written warranty."  On February 23, 1996 Mr. Hochberger wrote Mr. Smith a letter which began as follows: "Per our discussion last week, I would like to respond to your concerns on: 1) Cooley's pool cover material; 2) *provide you with a written warranty*; and 3) establish a volume price structure."  (Defendant's Exhibit 11)(emphasis added).  Mr. Hochberger went on to discuss the advantages of Cooley's polypropylene material over the vinyl material Coverstar was then using, and he attached a copy of Cooley's three-year Pool

3

Cover Limited Warranty to his letter.  This was the same warranty Cooley had previously provided to Mr. Smith.

On October 10, 1996, Coverstar issued a blanket purchase order for 1.5 million square feet of polypropylene pool cover material to be delivered by Cooley during the following year.  This contract document was written by Mr. Smith on behalf of Coverstar, and he determined what contract terms to include within the four corners of the purchase order.  Mr. Smith listed nine contract terms on the second page of the contract.  Term number four states, "*3 yr. warranty as faxed to Coverstar is effective.*"  (Defendant's Ex. 12)  Coverstar does not dispute that the warranty referred to by Mr. Smith in this purchase order was the three-year Cooley Pool Cover Limited Warranty that Mr. Hochberger faxed to Mr. Smith on June 23, 1996, and that he had previously faxed to Mr. Smith on June 21, 1994.

Coverstar initially claimed that it never agreed to or even discussed Cooley's limited warranty after 1994, but now concedes that it incorporated the warranty into its contract with Cooley in 1996.  Coverstar now claims instead that the limited warranty only applied to vinyl fabric (that it did not buy), and not to polypropylene fabric (that it did buy).  In an apparent attempt to bolster this argument, Coverstar, in its opposition brief, renames the warranty, "Proposed Vinyl Warranty Form."  This is misleading and unpersuasive–the warranty is clearly labeled "Cooley Incorporated Pool Cover Limited Warranty."  For three years after Coverstar issued the purchase order, the only type of material that Coverstar purchased from Cooley was polypropylene material.

In early 1997, Coverstar began receiving customer complaints of fabric delamination, loss of flotation characteristics, inconsistency in color, texture, weaving and other characteristics.  In

4

response to these complaints, Cooley modified its product formula.  As the different formulations of the material failed, Cooley modified its product formula several times in an attempt to fix the problems.  By 1998 large quantities of the pool cover material had failed and been replaced by Coverstar.  On August 28, 2001 Coverstar filed this suit.

### IV.  THE LIMITED WARRANTY AND THE BLANKET PURCHASE ORDER DRAFTED BY COVERSTAR PROVIDE AN UNAMBIGUOUS CONTRACT THAT LIMITS COVERSTAR'S REMEDY TO "THE COST OF REPAIR OR REPLACEMENT."

**A.  The warranty is clear, reasonable, and unambiguous, and it governs the parties dealings.**

After a careful review of the pleadings, depositions, and exhibits, the Court has determined that no reasonable jury could find that Cooley's three-year Pool Cover Limited Warranty–which was incorporated *by Mr. Smith* into Coverstar's purchase order for polypropylene material–did not apply to Cooley's polypropylene material.

The Court agrees with Cooley that the three-year "Cooley Incorporated Pool Cover Limited Warranty" and Coverstar's October 10, 1996 blanket purchase order, which explicitly states, "3 yr warranty as faxed by Cooley is effective," form the agreement between the parties.  Coverstar authored the purchase order and clearly incorporated Cooley's three-year warranty.  It is also noteworthy that Cooley's pool cover limited warranty was taken almost verbatim from a sample warranty that Coverstar provided to Cooley as an example of a pool cover warranty.

The warranty is clear and unambiguous.  It provides a limited warranty of three years from the date of manufacture for extrusion laminated products intended for use as swimming pool covers.  It is undisputed that Cooley's polypropylene material was an extrusion laminated product.  Blasius depo. at p. 245, lines 20-24, and p. 246, lines 1-11.  The warranty also provides

that the only remedy for defective material is "for replacement of Cooley material or credit for the amount of Cooley material invoiced," and that the warranty is limited to the conditions stated and that Cooley "will not be liable for subsequent or consequential damages." The warranty is reasonable, easily understandable, and limits Coverstar's remedy to replacement fabric or credit for the purchase price paid for defective fabric that fails within three years.

It is undisputed that Cooley has already tendered to Coverstar replacement material or credits totaling well in excess of the amounts invoiced to Coverstar for allegedly defective material. Affidavit of Derk Rasmussen, ¶¶6-7.

**B. Coverstar's allegation that the warranty was only intended to apply to vinyl and that therefore its applicability is in dispute, is insufficient to create a genuine issue of material fact.**

Coverstar argues that at a minimum the applicability of the warranty is in dispute, and does not support a motion for summary judgment. The Court finds, however, that Coverstar's evidence in support of this assertion is insufficient to create a genuine issue of material fact. Coverstar asserts that the phrase in the warranty requiring that the material be cleaned with a solution "designed for vinyl fabrics," proves that the warranty was intended to apply only to vinyl, not polypropylene material. The Court disagrees.

Cooley's former chemist explained that when Cooley developed its polypropylene material, there was no polypropylene cleaner on the market. Polypropylene is more chemically resistant than vinyl, however, so Cooley felt confident in recommending to its customers that they wash the polypropylene fabric with a vinyl cleaner. A cleaner that was suitable for vinyl would do no harm to polypropylene. Blasius depo. at pp. 294-296.

Cooley has provided numerous contemporaneous documents, some of which were authored by Coverstar, which impeach Coverstar's statements that the warranty was only intended to apply to vinyl, not polypropylene.  The following are just a few of these documents.  The April 28, 1994 Hochberger memorandum to Mr. Bowman discussing potential business with Coverstar has as its subject, "*Polypropylene* Pool Covers."  (Plaintiff's Response to Statement of Undisputed Facts ("Plaintiff's"), Ex. C)  In June 1994 Cooley sent Coverstar a sample of polypropylene material (the product specification sheet read: "Type of coating . . . Face/Back: *Polypropylene*").  (Defendant's Ex. 3)  On June 8, 1994, Mr. Smith acknowledged receipt of this polypropylene fabric sample, and stated that he hoped that this fabric would "displace a great deal of the use of vinyl."  (Plaintiff's Ex. O)  When negotiations broke off in 1994, Mr. Hochberger wrote a fax to the home office which said, "Unfortunately we lost the order on *polypropylene pool cover material*.  Lanny was disgusted with delays on the product and did not like [the price]."  (Defendant's Ex. 8)

When negotiations resumed in 1995-96, the fabric at issue was again unquestionably polypropylene.  Product specification sheets identified the type of coating as "TPO" (thermal plastic olefin, which is another name for polypropylene).  On February 23, 1996, Mr. Hochberger sent Mr. Smith letter in which he again transmitted the "Cooley Incorporated Pool Cover Limited Warranty" and clearly confirmed that the material at issue was polypropylene, not vinyl.  (Defendant's Ex. 11)  Finally, Coverstar's October 10, 1996 purchase order on its face is for "TPO," i.e. polypropylene, not vinyl, and specifically incorporated by reference the "3 yr warranty as faxed to Coverstar."  (Defendant's Ex. 12)

All of these contemporaneous documents indicate that the warranty was in fact intended to apply to the polypropylene material that is the subject of this lawsuit. Coverstar's references to another proposed warranty which was never adopted, to Cooley's sales literature of November 1997 (and possibly late 1996), and to ongoing warranty discussions between the parties, are all insufficient to create a genuine issue of material fact as to whether the clear, unambiguous Cooley Incorporated Pool Cover Limited Warranty governed the parties' dealings.

**C. Coverstar's argument that the warranty failed to limit express and implied warranties, is also insufficient to create a genuine issue of material fact.**

Coverstar argues that even if the warranty was in effect, its language fails to limit express and implied warranties that are imposed on sellers by law. However, this Court finds that the language in the limited warranty clearly limits Coverstar's remedy and is unambiguous: "Cooley limits this warranty to the above-mentioned conditions and will not be liable for subsequent or consequential damages." The warranty contains an additional express limitation on damages when it clearly states: "Warranty is for replacement of Cooley material or credit for the amount of Cooley material invoiced."

Utah law enforces such limitations on liability. *Otsuka Electronics v. Imaging Specialists, Inc.,* 937 P.2d 1274, 1280 (Utah Ct. App. 1997) ("contract limitation on damages and remedies is valid"). Utah Code Ann. § 70A-2-719(3) (2006) states, "Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable . . . . [L]imitation of consequential damages . . . where the loss is commercial is not [unconscionable]."

Coverstar relies on S*eal v. Tayco*, 400 P.2d 503 (Utah 1965) for the proposition that provisions waiving liability for "special or consequential damages" relates strictly to the

8

provisions preceding the waiver, and does not relate to provisions construed outside the four corners of the document, such as implied warranties when not expressly stated.  The *Seal* case is distinguishable from the present case.  The language limiting consequential or special damages in that case modified only the acts-of-God clause that was contained in the same paragraph and directly preceded the limitations clause.  In the present case, the consequential and subsequent damages limitations are stated in their own separate paragraph, and obviously apply to the entire warranty.

      The above-described evidence effectively ends this case.  There is a clear, unambiguous purchase order drafted by Coverstar that explicitly incorporates Cooley's three-year Pool Cover Limited Warranty.  Cooley has complied with the warranty by providing replacement material for all fabric that failed within three years of manufacture.  The warranty bars Coverstar's claims.  Accordingly,  the Court hereby grants Defendants' Motion for Summary Judgment (Warranty and Statute of Limitations).  The Court will now briefly address the two remaining motions for summary judgment.

**VI.  COOLEY'S MOTION FOR SUMMARY JUDGMENT (ESTOPPEL, ACCORD AND SATISFACTION) IS RENDERED MOOT BY THE COURT'S DECISION ABOVE.**

      Utah law does not provide for an equitable remedy if an adequate remedy exists at law. *See American Towers Owners Ass'n, Inc. v. CCI Mechanical, Inc.,* 930 P.2d 1182, 1193 (Utah 1996).  Because the Court has determined that a valid contract exists, Coverstar's equitable estoppel claim fails as a matter of law.

      As stated above, this Court has determined that the written limited warranty clearly and unambiguously limited Coverstar's remedy to replacement of material or credit for amount

invoiced. Cooley's independant accounting expert provided undisputed testimony that Cooley has already tendered to Coverstar replacement material or credits totaling well in excess of the amounts invoiced to Coverstar for allegedly defective material. Affidavit of Derk Rasmussen, ¶¶6-7, Ex. C. Cooley has complied with the warranty, therefore, the accord and satisfaction claims are rendered moot.

### V. COOLEY'S MOTION FOR SUMMARY JUDGMENT (ASSIGNED CLAIMS) IS GRANTED BECAUSE COVERSTAR HAS NOT DEMONSTRATED THAT THE DISTRIBUTORS HAVE A VIABLE WARRANTY CLAIM TO ASSIGN.

The parties have extensively briefed the choice of law analysis. But since Utah has adopted the most expansive version of UCC § 2-318 and this Court finds that even under this version the distributors claims are not allowed, the choice of law analysis does not apply.

Coverstar filed an amended complaint in which it claimed that seven of its out-of-state distributors assigned claims to it. The distributors are down-stream retailers of a product–a completed pool cover system–manufactured by Coverstar using several component parts (e.g. ropes, metal tracks, motor, fabric), one of which, the fabric, was produced by Cooley. The distributors had no contractual relationship with Cooley, but instead purchased pool cover systems from Coverstar for use by pool owners. The question this Court must answer is whether the down-stream distributor of a finished product, who is not the end consumer of the product, can bring a breach of warranty action against the remote manufacturer of one of the components of the finished product where the downstream distributor had no contractual relationship with the component manufacturer. This Court concludes that the answer is no.

Utah Code Ann. § 70A-2-318 provides: "A seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume, or be affected by the

goods and who is injured by the breach of warranty." Coverstar notes that the term "injured" under the third party beneficiary provision of the statute has specifically been interpreted to include a claim for solely economic damages. *See Hyundai Motor Co. V. Goodin,* 822 N.E.2d 947, 956 (Ind. 2005). The remedy in the *Goodin* case, however, was limited to the difference in cost between the good as warranted and what was actually provided. The court allowed the end consumer to recover the difference in value between the defective brakes in the car provided to the consumer and the brakes as warranted. The claim for consequential damages was not allowed.

In this case, the distributors' purported warranty claims have nothing to do with the value of the pool covers, rather the distributors seek to recover for purely economic losses in the form of labor costs, overhead costs, lost profits, delayed lost profits and damages for injury to business reputation. Their damages all flow from the *sale* of the good, not from the *use or consumption* of the good as contemplated by the UCC.

Examining the intent of drafters of the UCC, White and Summers note: "But even Alternative C (the one adopted by Utah) does not expressly authorize recovery for direct economic loss. Indeed, the notes of the Permanent Editorial Board suggest that the Code drafters may have intended Alternative C merely to extend as far as 402A or the Restatement, which abolishes the privity requirement only in cases of property damage and personal injury." 1 White and Summers, Uniform Commercial Code§ 11-5 (4th ed.) (Citing Perm,Ed.Bd. UCC Report No. 3 at 14 (1966)).

Although the Tenth Circuit has not addressed this issue, cases from other jurisdictions suggest that the distributors in this case were not buyers and did not receive a warranty on which

to base a claim against Cooley.[5]  When a distributor would receive an order from a pool owner, the distributor would forward the order to Coverstar, who would make the pool cover and send it to the distributor, who would usually then install it. The pool owner would receive a written warranty from Coverstar.  The distributor never received a warranty, nor did it need one.  The distributor did not use or consume the pool cover. The distributor bought the pool cover solely on behalf of the pool owner, whose money paid for the pool cover.  The Georgia Court of Appeals in *Weaver* stated, "A buyer is not defined as one who buys on behalf of another or as the agent of another." *Weaver,* 218 S.E.2d at 262.  A passive retailer who makes purchases solely on behalf of the end-user may be a merchant as defined by the UCC, but it is not a buyer.

Because the distributors were not buyers, they obtained no warranties which would create a claim against Cooley.  The distributors cannot assign warranty claims that they do not have, therefore, the Court grants Defendants' Motion for Summary Judgment on Assigned Claims.

It should be noted that the distributors indemnification claims also fail.  For an indemnification claim, Utah law requires that the distributors discharge a legal obligation owed to a third party.  *See Salt Lake City School District v. Galbraith & Green, Inc.* 740 P.2d 284, 287 (Utah 1987) (second prong requires "discharge of legal obligation owed to a third party");

---

[5] *See Hininger v. Case Corporation,* 23 F.3d 124, 128-29 (5th Cir. 1994) (noting that privity was not required for consumer to assert remote claim against manufacturer of complete product, but finding consumer could not assert a claim against a remote *component* manufacturer); *Weaver v. Ralston Motor Hotel, Inc,* 218 S.E.2d 260, 262 (Ga. Ct. App. 1975) (finding employee who purchased gas for employer and who was later injured by defect in gas was not a buyer entitled to sue for breach of warranty); *Downriver Internists v. Harris Corp.* 929 F.2d 1147, 1148-49 (6th Cir. 1991) (medical partnership which financed hospital's purchase of computer hardware and software could not maintain warranty action where goods were intended for hospital's use and contracts were between seller and hospital).

*Hanover Ltd. V. Cessna Aircraft Co.,* 758 P.2d 443, 446 (Utah Ct. App. 1988) (right to indemnification is based on determination of fault and covers any judgment or settlement in connection with the underlying products liability action). None of the distributors have alleged involvement in any litigation with pool owners. Nor have any alleged that they had to pay a judgment or settlement connected with any legal action. Because there is no underlying legal action and discharge of a legal obligation, the distributors' claims for indemnification fail under Utah law.

## V.  CONCLUSION

For the foregoing reasons Defendant's Motion for Summary Judgment (*Warranty and Statute of Limitations*) (Docket #99) is granted. By this decision, Defendant's Motion for Summary Judgment (*Estoppel, Accord and Satisfaction*) (Docket #124) is rendered moot. Finally, Defendant's Motion for Summary Judgment (*Assigned Claims*) (Docket #106) is granted.

SO ORDERED.

DATED this 1st day of June 2006.

BY THE COURT:

/s/ David Sam

DAVID SAM
SENIOR JUDGE
U.S. DISTRICT COURT